**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | | |
|---|---|---|---|
| **NORCAVE PROPERTIES, LLC,** | ) | | |
| | ) | | |
| **Petitioner,** | ) | | |
| | ) | | |
| **v.** | ) | **No.:** | 1:23-cv-00198 |
| | ) | | |
| **UNITED STATES OF AMERICA,** | ) | | |
| | ) | | |
| **Respondent.** | ) | | |

## PETITION TO QUASH IRS THIRD-PARTY SUMMONSES OF THE INTERNAL REVENUE SERVICE

Petitioner Norcave Properties, LLC ("Petitioner"), by and through its attorneys, respectfully petitions this Court to quash the improper and invalid administrative summonses (the "Summonses") issued by the Internal Revenue Service ("IRS") to each of Beussink Hey & Roe PC, Legacy Mining Company, LLC, MCW Realty Investors Inc., Norcave Holdings, LLC, Reserve at Welsh Mineral Co., Sarah Miget, and The Reserve at Welsh LLC, on October 16, 2023, and Paul L. Vogel and the law firms Armstrong Teasdale, LLP and Vogel Law Office on October 18, 2023 (collectively "Summonsed Parties"). These Summonses are a part of 37 total summonses issued by the IRS with respect to its audit of Petitioner. While the IRS is generally permitted to engage in limited factfinding, that permission is carefully circumscribed. Under the facts of this case, the IRS's Summonses should be quashed.

1

## JURISDICTION AND VENUE

On or about October 16, 2023 and October 18, 2023 Internal Revenue Agent Lijia Wu ("Agent Wu") issued Summonses directed to each of the Summonsed Parties for the production of documents under the purported authority of 26 U.S.C. § 7602(a). (Decl. of Bryan Kelly ¶ 15, Ex. B).

Under 26 U.S.C. § 7609(b)(1), any person entitled to notice of a summons shall have the right to begin a proceeding to quash the summons. A person entitled to notice of a summons includes the party identified in the summons, other than the summonsed party. 26 C.F.R. § 301.7602-2(a). Here, Petitioner is authorized to bring this Petition because it is the party identified in the summons. The Summonses at issue involve the IRS's examination of Petitioner. (Decl. of Bryan Kelly ¶ 15). Petitioner is listed on the first page of each summons as the party for which the summons is "In the matter of," and it is therefore clearly identified in the Summonses.

By statute, a proceeding to quash such a summons must be brought in the United States District Court for the district in which the person to whom an administrative summons is issued either resides or is found. 26 U.S.C. § 7609(b)(2); *see also id.* § 7609(h). The Summonsed Parties' all have principal places of business, offices, or residences in the Eastern District of Missouri. The addresses listed on the Summonses are all Missouri addresses in the Eastern District of Missouri. A physical presence, including a branch office of a summonsed party, is sufficient for that party to be considered "found" within a district. *See, e.g.*, *Pilchesky v. United States*, 2008 U.S. Dist. LEXIS 75170, at *4-7 (M.D. Pa. Sept. 29, 2008); *Hopkins v. IRS*, No. 07-262, 2008 U.S. Dist. LEXIS 45510, at *10 (D.N.M. Mar. 28, 2008).  Therefore, since the Summonsed Parties have a physical presence in the Eastern District of Missouri, this Court has jurisdiction over this case.

Lastly, a proceeding to quash an IRS summons must be commenced within 20 days of when notice is given to the summonsed party. 26 U.S.C. § 7609(b)(2). The Summonses are dated

1

October 16, 2023 and October 18, 2023. 20 days from October 16, 2023 is Sunday, November 5, 2023. If the period for filing ends on a Sunday, the period continues to run until the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. § 6(a)(1)(C). Accordingly, this Petition is timely.

## FACTUAL AND PROCEDURAL BACKGROUND

Agent Wu began her examination of Petitioner sometime in December of 2020. (Decl. of Bryan Kelly ¶ 7). At issue was Petitioner's donation of a perpetual conservation easement and corresponding charitable deduction on its 2018 tax return. (*Id.*)

Beginning December 15, 2020, Agent Wu issued 15 separate information document requests ("IDRs") to Petitioner. (*Id.* ¶ 8). These requests varied in length, with the longest including 29 individual requests. (*Id.*). Petitioner timely responded to all of Agent Wu's requests, many of which were duplicative of documents already provided to Agent Wu. (*Id.* ¶¶ 9, 10). Nevertheless, Petitioner's responses provided the documents requested by Agent Wu along with numerous narrative explanations and references to responsive documents that had already been provided to Agent Wu. (*Id.* ¶ 10, Ex. A, for an example of duplicative requests made by Agent Wu). In total, Petitioner provided 9,296 pages of documents in response to Agent Wu's IDRs. (*Id.* ¶ 11).

Despite Petitioner's timely compliance with the IRS's requests, Agent Wu proceeded to issue a number of summonses. (*Id.* ¶¶ 14, 15). The first of these summonses was issued in March 2021 to Petitioner directly (*i.e.*, a first-party summons), only three months after the IRS began its examination of Petitioner. (*Id.* ¶ 12). Agent Wu then began issuing requests for information to indirect partners in Petitioner, in contravention of the power of attorney in place for Petitioner's legal counsel and the IRS audit rules codified by Congress in the Bipartisan Budget Act of 2015.[1]

---

[1] Petitioner is a partnership under the Bipartisan Budget Act of 2015 (Public Law No. 114-74), which requires IRS examinations to be conducted at the partnership level, and not the individual

(*Id.* ¶ 12). Agent Wu then issued two additional third-party summonses in late 2021. (*Id.* ¶ 14). Agent Wu stopped issuing IDRs to Petitioner directly—with the most recent request being made November 3, 2022—and instead began exclusively issuing summonses to third parties.

In addition to the previous summonses issued to the two third parties in 2021 and the letters sent to the investors, Agent Wu recently issued the following 35 summonses: Vogel Law Office, LLC (counsel to Petitioner); Armstrong Teasdale, LLP (counsel to Petitioner); Paul L. Vogel (counsel to Petitioner); Mick Law P.C. LLO (counsel to Petitioner); Bowen & Associates CPA PC (tax return preparer); D. Randall Bowen (partner in Bowen & Associates CPA PC); Dempsey Lord Smith LLC (managing broker dealer); Jerry E. Dempsey, Jr. (CEO of Dempsey Lord Smith LLC); Douglas R. Kenny (appraiser); Diversified Enviro Products & Services, Inc. (service provider); Thomas C. LeBlance, Jr. (President of Diversified Enviro Products & Services, Inc.); Legacy Mining Company, LLC (service provider); Atlantic Coast Conservancy (donee of the conservation easement donation); Robert D. Keller (CEO of Atlantic Coast Conservancy); Webb Creek Management Group (manager of Petitioner); Bryan W. Kelley (manager of Webb Creek Management Group); Norcave Holdings, LLC (property holding company); Dan Lavelle Donald Jr. (previous land owner); Reserve at Welsh Mineral Co., LLC (previous land owner); The Reserve at Welsh LLC (previous land owner); The Reserve at Welsh (previous land owner);[2] MCW Realty Investors Inc. (partner in The Reserve at Welsh); Beussink Hey & Roe PC (tax return preparer for a service provider and certain property holding companies and prior land owners); Sarah E. Miget

---

partner level. Further, under the ABA's Model Rule of Professional Conduct 4.2, a partner is considered a "constituent" of a partnership, and therefore contacts with individual partners should occur only through legal counsel representing the partnership.

[2] Agent Wu issued two separate yet identical summonses to The Reserve at Welsh. One was issued to its principal place of business and the other was issued to the address of the entity's former Partnership Representative.

(employee of Beussink Hey & Roe PC); Timothy S. Pollock (brief position as Partnership Representative of The Reserve at Welsh); Chandle J.C. Huff (indirect investor in Petitioner); Mark Pedersen (indirect investor in Petitioner); Travis Karl (indirect investor in Petitioner); Webb Creek Capital Partners II LLC (indirect investor in Petitioner); Joseph R. Scherzinger (indirect investor in Petitioner); Brandon A. Huff (indirect investor in Petitioner); Michael John Sharkey (indirect investor in Petitioner); Dustin Snider (relationship unknown); GSO Energy Services LLC (relationship unknown); Scott A. Moore (relationship unknown). (*Id.* ¶ 15, Ex. B).

In sum, Agent Wu has issued 38 total first- and third-party summonses in this case—an unheard of and unusual amount for any other Revenue Agent. (*Id.*). All of these summonses make similar irrelevant requests and ask for documents already produced by Petitioner. (*See id.*).

## <u>REASONS WHY THE SUMMONSES SHOULD BE QUASHED</u>

The IRS has the authority to issue summonses "[f]or the purpose of ascertaining the correctness of any return, . . . determining the liability of any person for any internal revenue tax . . . , or collecting any such liability." 26 U.S.C. § 7602(a). That power includes a summons "[t]o examine any books, papers, records, or other data which may be relevant or material to such inquiry." *Id.* § 7602(a)(1). The summons power is not limited to the taxpayer under investigation, but may also include a third party who has relevant information. 26 U.S.C. § 7602(a)(2).

With this power, the IRS must at all times use the summons authority in good-faith pursuit of a congressionally authorized purpose. *United States v. Stuart*, 489 U.S. 353, 359 (1989). Thus, enforcement of an IRS summons is only proper when the IRS proves that (i) the summons was issued for a proper purpose; (ii) the information sought is relevant to that purpose; (iii) the information sought is not already in possession of the IRS; and (iv) the government has complied with the necessary administrative steps regarding the issuance and service of the summons. *United*

*States v. Powell*, 379 U.S. 48, 57-58 (1964).  These four standards are generally known as the "*Powell* factors."

When a taxpayer brings a judicial proceeding to quash a summons, the government must satisfy its *prima facie* burden of showing compliance with the *Powell* factors. If the government is able to satisfy its burden, the taxpayer can challenge the summons by disproving one or more of the *Powell* factors or by demonstrating that enforcement of the summons would result in an abuse of process. *White v. United States*, No. 4:09-CV-855 CAS, 2009 WL 222405, at *2 (E.D. Mo. Oct. 15, 2009); *United States v. Monumental Life Ins. Co.*, 440 F.3d 729, 733 (6th Cir. 2006).

### A.  Under the *Powell* factors, the Summonses should be quashed.

The Summonses are invalid and should be quashed because they fail under the *Powell* factors. While the IRS has the authority to issue summonses to third parties, the unprecedented number of summonses issued by Agent Wu leads to the conclusion that the Summonses do not aid in the civil examination of Petitioner.

### i.    The Summonses lack a proper purpose

Congress has declared the only proper purposes for which the IRS can issue a summons. As relevant to this case, those purposes include 1) ascertaining the correctness of any tax return, 2) determining tax liability, and 3) collecting any such liability. 26 U.S.C. § 7602(a). However, if the IRS acts in bad faith or abandons a civil purpose in its investigation, then a summons should not be enforced. *Robert v. United States*, 364 F.3d 988, 996 (8th Cir. 2004).

The very purpose of an IRS audit is to determine the correctness of a return and/or determine a taxpayer's liability. The IDR process is the IRS's primary tool to gather documents from a taxpayer and meet those ends. IRS LB&I-04-0214-004 (Feb. 28, 2014) ("IDRs are an important part of the information gathering process during any examination."). If and only if a

taxpayer does not provide the requested documents should the IRS issue a summons. *Id.* ("If a taxpayer does not provide a complete response to an IDR by the Pre-Summons Letter response date, the examiner or specialist must complete the next phase of the enforcement process, the Summons"). *Id.*

Here, Norvcave and the IRS engaged in an exhaustive IDR process. Agent Wu ultimately issued 15 total IDRs. (Decl. of Bryan Kelley ¶ 8). Petitioner responded timely to all 15 IDRs, providing 9,296 pages of documents. (*Id.* ¶¶ 9, 11). The last of these IDRs was issued on November 3, 2022. (*Id.* ¶ 8). Nearly a year later, Agent Wu issued 35 summonses[3] to third parties. (*Id.* ¶ 15). Petitioner's representative has dealt with IRS audits in the past and has never heard of a Revenue Agent issuing more than a few summonses in a given examination, let alone 37. (*Id.* ¶ 18).

The IRS has never explained the purposes of these 37 additional summonses. Agent Wu has over 9,000 pages of documents from Petitioner alone. (*Id.* ¶ 11). Yet, she also asked 36 different parties, most of whom have minimal involvement in the donation at issue, for additional documents. (*See id.* ¶ 15). In fact, some parties may not have any role in the transaction at all. (*Id.*) And at least one party received multiple identical summons sent to different addresses.

After responding to 15 IDRs, all relevant documents in the case are in the hands of Agent Wu. There cannot be any valid purpose for the issuance of the Summonses when Agent Wu already has all relevant documents from Petitioner. The only explanation for the additional summonses can be harassment of Petitioner, by issuing unnecessary and burdensome document requests to third parties Petitioner has worked with or continues to work with.

---

[3] Agent Wu issued two third-party summonses (that Petitioner is aware of) in 2021. The remaining 35 were issued in 2023.

Agent Wu has abused the summons process in at least two other cases as well. The property owned by Petitioner was cut out of a larger tract of land (the "Parent Tract"). (*Id.* ¶ 19). A conservation easement was donated on at least one other parcel of the Parent Tract, similar to the property owned by Petitioner. (*Id.*). Revenue Agent Wu audited the partnership that owned that parcel and later opened an audit of the controlling partner of the partnership. *See Barlan Holdings, LLC v. United States*, 1:22-cv-01487-WMR (Sept. 7, 2022). Agent Wu was assigned as the Revenue Agent in both audits. (Decl. of Bryan Kelley ¶ 19). In those cases, Agent Wu issued at least 25 and 24 summonses, respectively. (*Id.*).

Petitioner does not question the IRS's general authority to issue summonses and understands that they can be useful – particularly when a taxpayer has not cooperated with the IRS. However, Petitioner was fully cooperative and compliant with the IDRs. The fact that Agent Wu has issued at least 86 summonses in three audits involving property from the same Parent Tract, when summonses are normally used sparingly in audits, evidences a pattern of lack of a legitimate purpose. Add to this the fact that Agent Wu issued a summons to Petitioner a mere three months into the audit further evidences, at a minimum that Agent Wu is abusing the summons process. Whether the goal is rooted in harassment or pure recklessness in ignoring the waste of resources caused by issuing so many summonses, the IRS cannot show a legitimate purpose.

Because they lack a legitimate purpose, the Summonses should be quashed. At the very least, Petitioner should be permitted to question Agent Wu and any other witness(es) that the IRS makes available as to the nature and scope of their purpose in seeking additional information from third parties.  *See United States v. Clarke*, 573 U.S. 248 at 254 (2018) (permitting a taxpayer to examine an IRS agent's motive for issuing a summons upon even circumstantial evidence of improper motive).

        *ii.    The information sought in the Summons is irrelevant*

Even if the IRS could show a legitimate purpose in issuing the Summonses, the IRS cannot establish that the universe of requested information is relevant. *Cf. United States v. Thompson*, 701 F.2d 1175, 1178 (6th Cir. 1983) ("Where the government's logic goes awry . . . is in its assumption that once a legitimate purpose is shown to investigate the taxpayer summoned, its impact upon third parties is invariably immaterial.").

A request is relevant if it "would cast light on the correctness of the return or aid in the determination." *United States v. Crawford*, No. 83 Misc. 60 (E.D. Mo. June 30, 1983). While the relevancy standard of 26 U.S.C. § 7602(a)(2) is broad, "it is not so liberal as to permit the government to 'wander at will' through a taxpayer's or trustee's records." *United States v. Prod. Plated Plastics, Inc.*, 129 F. Supp. 2d 1099, 1103-04 (W.D. Mich. 2000) (quoting *United States v. Nw. Pa. Bank & Tr. Co.*, 355 F. Supp. 607, 613 (W.D. Pa. 1973)); *see also United States v. Dauphin Deposit Tr. Co.*, 385 F.2d 129, 131 (3d Cir. 1967) (explaining that the IRS "must identify with some precision the documents it wishes to inspect") (citing *United States v. First Nat'l Bank of Fort Smith, Ark.*, 173 F. Supp. 716, 720 (W.D. Ark. 1959)). The IRS must prove that it is requesting the documents for more than just convenience. *United States v. Matras*, 487 F.2d 1271, 1275 (8th Cir. 1973). Importantly, "judicial protection against sweeping or irrelevant orders is particularly appropriate in matters where the demand for records is directed not to the taxpayer but to a third-party." *Monumental Life*, 440 F.3d at 736 (internal quotation omitted); *see also Software Cap. Holdings, Inc. v. United States*, No. 1:07-CV-2472-JOF, 2008 WL 11470729, at *9 (N.D. Ga. Mar. 3, 2008) (explaining that "one's status as the taxpayer under audit or a third-party to that audit is important"). "[T]he mere assertion of relevance by an IRS agent will not necessarily satisfy the government's burden." *Monumental Life*, 440 F.3d at 736 (internal quotation omitted).

Thus, the IRS's burden, "while not great, is also not non-existent." *United States v. Goldman*, 637 F.2d 664, 667 (9th Cir. 1980). The government "must have some reasonable expectation, rather than idle hopes, that something might be discovered." *Prod. Plated Plastics*, 129 F. Supp. 2d at 1103-04 (citing *David H. Tedder & Assocs., Inc. v. United States*, 77 F.3d 1166, 1169 (9th Cir. 1996)). At the very least, the government must proffer "a minimal showing of specificity" as to why it needs the requested materials and what information it may expect to find in them. *Goldman*, 637 F.2d at 667. The specificity is required so that the requests are not "excessive." *John Does v. United States*, 866 F.2d 1015, 1020 (8th Cir. 1989).

For example, in *United States v. Eaton Corp.* the IRS sought to enforce a summons compelling performance evaluations of an employee of the taxpayer. No. 12 MC 24, 2012 WL 3486910, at *13 (N.D. Ohio Aug. 15, 2012). The IRS submitted an affidavit stating that the evaluations were relevant. *Id.* The court disagreed and held that the IRS had not "persuasively demonstrated" the relevance of the documents, particularly when the IRS could not show that the documents "actually contain[ed] any substantive information." *Id.* at *14. Instead, the IRS's position was "purely speculative" that the documents were "*likely*" to contain relevant information. *Id.* at *15 (emphasis added). Further, the IRS had alternative avenues to obtain similar information. *Id.*

So too here. The face of the Summonses confirms that the requests are *not* limited to relevant documents. The IRS has already made its determination in this case. It is no secret that the IRS is auditing all taxpayers who claimed deductions for conservation easements. (Decl. of Bryan Kelley ¶ 16). The IRS made conservation easement donations "listed transactions" under Notice 2017-10, meaning the IRS considers them to be non-deductible tax avoidance transactions. *See* IRS Notice 2017-10, Listing Notice—Syndicated Conservation Easement Transactions; IRS,

9

Abusive Tax Shelters and Transactions, *available at* https://www.irs.gov/businesses/corporations/abusive-tax-shelters-and-transactions. As a result, the IRS is disallowing deductions and imposing penalties on every single taxpayer who claims a deduction for the donation of a conservation easement. *See* Barbara Kaplan, Michelle Ferreira, Jennifer Vincent, "Prepare for Greater IRS Scrutiny on Conservation Easements," Greenberg Traurig, December 2019, *available at* https://www.gtlaw.com/-/media/files/insights/published-articles/2019/12/prepare-for-greater-irs-scrutiny-on-conservation-easements.pdf.

Since the IRS has already determined that it is going to disallow Petitioner's deduction and impose penalties, there is no reason that it needs additional documents from third parties. Any additional documents would not cast light on the correctness of the return or aid Agent Wu in her determination. Agent Wu may claim that she needs to continue building her case – but that is simply not true. Once Agent Wu formally disallows the deduction and imposes penalties, Petitioner's only recourse will be to file a petition in the United States Tax Court. Once the case is in Tax Court, the Court will hear the case *de novo* and the parties will engage in an entirely new discovery process, without regard to what was collected by Agent Wu. Therefore, the Summonses request information that is not relevant.

Even if the IRS had not made its determination in this case or Norcave hadn't already provided all relevant documents to the IRS, most of Agent Wu's requests would still not be relevant. A number of the Summonsed Parties have no involvement with Norcave or the donation at issue. For example, Beussink Hey & Roe PC and Sarah Miget are return preparers that did not prepare any tax returns for Petitioner and had no involvement in the donation. Yet, Agent Wu asks both for records of capital contributions, mitigation reports, and timesheets, even though she already knew they were not the return preparers for Petitioner based upon tax returns filed with

the IRS. For the Summonsed Parties that were involved with the donation (even indirectly), Agent Wu's requests are similarly irrelevant. For example, Agent Wu asks Legacy Mining Company, LLC a third-party service provider, for all documents and correspondence "related to the formation and **operation** of Legacy Mining Company, LLC including phone records, electronic mail . . . text messages, voicemail messages, faxes, letters, telegrams, telexes and other related documents and material" (emphasis added). (*See* Decl. of Bryan Kelley, ¶ 15). The plain language of this request suggests that Agent Wu is seeking every document Legacy Mining Company, LLC possesses regardless of whether it has anything to do with Petitioner. Agent Wu's request would include all documents regarding the operations of the company and information regarding other clients of Legacy Mining Company, LLC, including all emails, phone records, and text messages.

In no way can such records be relevant to the donation at issue when they don't even involve Petitioner. Such requests are found in each of the summonses issued by Agent Wu. These requests are generic and overbroad and have not been tailored to the Summonsed Parties or even to the issues relevant to the examination of Petitioner.

> iii.    *The IRS is in possession of the requested documents*

If information is already in the possession of the IRS, then there is no need for a summons. *See Powell*, 379 U.S. at 58.  That is, it is the IRS's burden to show that it has not had an opportunity to utilize the documents "meaningfully in any manner."  *United States v. Hefti*, 879 F.2d 311, 313 (8th Cir. 1989).  As with the other factors, this burden is especially important when the recipient of the summons is a third party—who "deserves greater protection against a burdensome summons."  *Id.*; *see also United States v. Gammo*, 428 F. Supp. 2d 705, 708 (E.D. Mich. 2006) ("Where confidential documents such as tax returns are sought, a subpoena issued to a third party, rather than the defendant, is given careful scrutiny.").

11

The IRS is already in possession of all relevant documentation in this case. The only issue in the audit is Petitioner's donation of a conservation easement. Upon the IRS's challenge, Petitioner must prove the value of the donation and that the easement is legally binding, permanently restricts the owner's use of the property, prevents modification and development, and lasts in perpetuity. *IRS Conservation Easement Audit Technique Guide*, p. 13, rev'd January 21, 2021.

As discussed above, Petitioner provided Agent Wu with 9,296 pages of documents. Those documents include transactional documents, tax return supports, appraisals, zoning documents, mining resource and valuation reports, and other miscellaneous documents. In other words, Petitioner provided all documents in its possession that the IRS needs to determine whether the donation is deductible and the value of said donation. If Agent Wu believes that she is not in possession of certain relevant documents, Agent Wu can provide Petitioner with a list of any documents she is missing – rather than requesting the same documents from multiple third parties. Since Petitioner was cooperative throughout the entire process, Agent Wu cannot in good-faith have reason to believe that Petitioner would stop cooperating. (Decl. of Bryan Kelley ¶ 9).

### B.  Further enforcement of the Summonses would be an abuse of process

#### i.  Agent Wu issued the Summonses to harass Petitioner

Even if the IRS could show that the Summonses satisfy all four *Powell* factors (which it cannot), enforcement of the Summonses would be an abuse of process.  Abuse occurs when a summons is "issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58. Courts have discretion to consider the particular

facts of a case to determine whether enforcement of a summons would result in an abuse of process. *Robert v. United States*, 364 F.3d 988, 995 (8th Cir. 2004).

As discussed above, the IRS has already made its determination regarding Petitioner's tax liability. (Decl. of Bryan Kelly ¶ 17). The IRS disallows 100% of the conservation easement deductions it audits. (*Id.*). Petitioner has already produced over 9,000 pages of documents, which Petitioner believes to be the entire universe of relevant documentation. Thus, enforcing the third-party Summonses and requiring the third-party recipients to produce documents would not in any way further the examination or help the IRS determine Petitioner's tax liability.

With no practical reason for issuing the Summonses, it appears that the IRS is either using the summons power to conduct discovery for use in Tax Court proceedings or is engaged in harassment of Petitioner or another party involved in the transaction. Such an end-run around discovery procedures is highly improper and an abuse of process. Agent Wu herself has issued at least 86 summonses in three cases involving the same Parent Tract. The sheer number of issued summonses raises an inference of bad faith and is a major waste of both taxpayer and government resources. F6

*ii.  The Summonses are an end-run around the attorney-client privilege*

Three of the Summonses at issue in this case were issued to law firms and lawyers who provided legal advice to Petitioner with regard to the underlying transaction: Paul L. Vogel, Armstrong Teasdale, LLP, and Vogel Law Office. (Decl of Bryan Kelly ¶ 5). Summonses are subject to the attorney-client privilege. *Upjohn Co. v. United States*, 449 U.S. 383, 398 (1981). If documents are privileged in the hands of the taxpayer, then they are also privileged in the hands of the taxpayer's attorney. *Fisher v. United States*, 425 U.S. 391, 403-05 (1976). The privilege

13

belongs to Petitioner, and only Petitioner can waive the privilege. *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977).

Petitioner has provided Agent Wu with non-privileged documents exchanged with the Summonsed Parties. However, Petitioner has not waived any assertion of privilege and maintains that confidential communications for the purpose of securing legal advice between Petitioner and the Summonsed Parties remain privileged.

Petitioner has no intention of waiving any available privileges. Yet, Agent Wu is attempting to obtain privileged documents directly from Petitioner's attorneys since Petitioner will not waive its privilege. These Summonses are an attempted end-run around the attorney-client privilege to secure privileged documents directly from Petitioner's attorneys.

Since the Summonsed Parties do not have authority to produce any privileged documents, these requests for documents protected by the attorney-client privilege should be made directly to Petitioner, not its attorneys. Circumventing the Petitioner in an attempt to secure privileged documents, when the Petitioner has no intention of waiving any privilege, is an abuse of process.

## <u>CONCLUSION</u>

The IRS cannot satisfy the *Powell* factors under these circumstances.  In addition, enforcing the Summonses would be an abuse of process since the IRS issued the Summonses in bad faith and in some cases, for the purpose of circumventing Petitioner's attorney-client privilege.

WHEREFORE, Petitioner, by and through its attorneys, prays that the Court 1) quash the Summonses issued by the IRS, 2) award Petitioner its attorney's fees and costs associated with this action, and 3) grant Petitioner all other just and proper relief to which it is entitled.

This the 6th day of November 2023.

<div style="margin-left: 40%;">

Respectfully submitted,

/s/Meeren S. Amin
Meeren S. Amin (seeking admission pro hac vice)
Bar No. 1031010(DC)
Fox Rothschild LLP
2020 K Street, N.W., Suite 500
Washington, D.C.  20006
Phone: (202) 794-1271
Fax: (202) 461-3102
mamin@foxrothschild.com

*Attorney for Petitioner Norcave Properties, LLC*

</div>

15

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **NORCAVE PROPERTIES, LLC,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No.:**  1:23-cv-00198 |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served a copy of the foregoing Petition To Quash IRS Third-party Summonses upon the following parties in compliance with the Federal Rules of Civil Procedure as provided in Federal Rules of Civil Procedure 4(i)(1) and 5(a)(1)(A) via Certified Mail (Return Receipt Requested) to:

Nick Llewellyn
Civil Process Clerk for the US Attorney
Thomas Eagleton U.S. Courthouse
111 S. 10th Street, 20th Floor
St. Louis, MO 63102

Internal Revenue Agent Lijia Wu
51 SW I st Avenue, Stop 4739LW,
Miami, FL 33 130

Beussink Hey & Roe PC,
16 South Silver Springs Road
Cape Girardeau, MO 63703

Legacy Mining Company, LLC,
718 W Business Highway 60
Dexter, MO 63841

MCW Realty Investors Inc.,
477 N Lindbergh Blvd. Suite 300
Saint Louis, MO 63141

Norcave Holdings, LLC,
718 W Business Highway 60
Dexter, MO 63841

Reserve at Welsh Mineral Co.,
718 W Business Highway 60
Dexter, MO 63841

Sarah Miget
8164 State Hwy W
Jackson, MO 63755

The Reserve at Welsh LLC
718 W Business Highway 60
Dexter, MO 63841

Paul L. Vogel
4 Barclay Woods,
Saint Louis, MO 63124

16

Armstrong Teasdale, LLP
770 Forsyth Blvd. Ste. 1800
Saint Louis, MO 63124

Vogel Law Office
477 N Lindbergh Blvd. Suite 320,
Saint Louis, MO 63141

Respectfully submitted, this 6th day of November 2023.

/s/Meeren S. Amin
Meeren S. Amin (seeking admission pro hac vice)
Bar No. 1031010(DC)
Fox Rothschild LLP
2020 K Street, N.W., Suite 500
Washington, D.C.  20006
Phone: (202) 794-1271
Fax: (202) 461-3102
mamin@foxrothschild.com

2